UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: MICHAEL LEE BELTRAMO, No. 7-05-18105 MA

Debtor.

_____

PHILIP J. MONTOYA, Trustee,

    Plaintiff,

v.                                                  Adversary No. 06-1184 M

LITTON LOAN SERVICING, LP and
SPECIALIZED LOAN SERVICING, LLC,

    Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on cross-motions for summary judgment filed by Defendant Specialized Loan Servicing, LLC ("SLS") and Plaintiff Philip J. Montoya (the Chapter 7 Trustee).[1] Defendant Litton Loan Servicing, LP ("Litton"), filed a Disclaimer of Interest in this adversary proceeding, conceding that the mortgage that forms the basis of its claim was never recorded, consenting to judgment being entered against it, and acknowledging that its claim is a general unsecured claim. (*See* Docket #16). At issue in this adversary proceeding is the competing priority lien interests of SLS and the Chapter 7 Trustee in certain real property of the Debtor located at 9420 Wilshire Avenue NE ("Property"). The parties do

---

[1]*See* Defendant SLS's Motion for Summary Judgment on the Validity and Priority of its Lien (Docket # 13); Plaintiff's Response to Defendant SLS's Motion for Summary Judgment, Counter-Motion for Summary Judgment and Memorandum of Law (Docket # 14); and Defendant SLS's Reply to Plaintiff's Response to SLS's Motion for Summary Judgment (Docket # 15).

1

not dispute that the Chapter 7 Trustee is entitled to avoid Litton's lien pursuant to 11 U.S.C. § 544[2] since the mortgage for which Litton is the loan servicing agent was never recorded in the real property records of Bernalillo County, New Mexico as required under N.M.S.A. 1978 § 14-9-1 (Repl. Pamp. 2003).[3] Rather, the contested issue of law before the Court concerns the application of 11 U.S.C. § 551[4] to the Chapter 7 Trustee's interest in the avoided lien. The following facts are undisputed:

---

[2]That section provides, in relevant part:
> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property by the debtor or any obligation incurred by the debtor that is voidable by --
> . . . .
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
> 11 U.S.C. § 544(a)(3).

Under applicable New Mexico statutory law, unrecorded mortgages do not "affect the title or rights to, in any real estate, of any purchaser . . . in good faith or judgment lien creditor; without knowledge of the existence of such unrecorded documents." N.M.S.A. 1978 § 14-9-3 (Repl. Pamp. 2003). Thus, the Chapter 7 Trustee, as hypothetical bona fide purchaser, can avoid the unrecorded mortgage in accordance with 11 U.S.C. § 544(a)(3) and N.M.S.A. 1978 § 14-9-3 (Repl Pamp. 2003).

[3]That section provides, in relevant part:
> All deeds, mortgages . . . and other writings affecting the title to real estate shall be recorded in the office of the county clerk of the county or counties in which the real estate effected thereby is situated.
> N.M.S.A. 1978 § 14-9-1 (Repl. Pamp. 2003).

[4]That section provides:
> Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 727(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.
> 11 U.S.C. § 551

2

1. The Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on September 23, 2005, and Philip J. Montoya was appointed as trustee of the bankruptcy estate.

2. As of the petition date, the Debtor owned the Property.

3. On June 11, 2004, Debtor signed a note and mortgage with Mortgage Electronic Systems, Inc. ("MERS") as nominee for Accredited Home Lenders ("Accredited") in the amount of $460,000.00 on the Property ("First Mortgage").

4. The First Mortgage was recorded in the real property records of Bernalillo County, New Mexico on June 16, 2004.

5. On June 11, 2004, Debtor signed a second note and mortgage with MERS as nominee for Accredited in the amount of $115,000.00 ("Second Mortgage").

6. The Second Mortgage was recorded in the real property records of Bernalillo County, New Mexico on June 16, 2004. The Second Mortgage was recorded after the First Mortgage.

7. Subsequently, in September or October of 2004, Debtor refinanced the First Mortgage by entering into a note and mortgage with GreenPoint Mortgage Funding Inc. ("GreenPoint").

8. The funds from the refinancing of the First Mortgage were used to pay off the First Mortgage with MERS in the amount of $466,045.95.

9. MERS, as nominee of Accredited, recorded a Release of the First Mortgage/Deed of Trust on October 29, 2004.

10. GreenPoint did not record its mortgage on the Property.

11. Litton became the servicer of GreenPoint's note and mortgage on the Property sometime after September 2004.

12. MERS, as nominee for Accredited, assigned the Second Mortgage to U.S. Bank

3

Case 06-01184-m    Doc 17    Filed 05/03/07    Entered 05/03/07 11:12:02 Page 3 of 12

National Association, as Trustee for Terwin Mortgage Trust 2004-22SL, Asset-Backed Certificates, series 2004-22SL ("Creditor").

13. SLS is currently servicing the loan for Creditor.

## SUMMARY JUDGMENT STANDARDS

It is appropriate to grant summary judgment when "the pleadings . . . together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56, Fed.R.Civ.P., made applicable to bankruptcy proceedings by Rule 7056, Fed.R.Bankr.P. Neither party asserts that genuine issues of material fact preclude summary judgment. Thus, because "'no issue of fact remains to be determined, the court has the power to decide the questions of law and enter summary judgment thereon.'" *In re Hiseman,* 330 B.R. 251, 255 (Bankr.D.Utah 2005)(quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Services*, 165 F.3d 1321, 1326 (10th Cir.1999)).

## DISCUSSION

SLS contends that because the Chapter 7 Trustee avoided GreenPoint's unrecorded mortgage in the Property, the Chapter 7 Trustee succeeds to that interest as the holder of an unperfected interest in the Property, so that SLS's properly recorded assignment of the Second Mortgage has priority over the interest of the Chapter 7 Trustee as the only properly recorded lien against the Property. The Chapter 7 Trustee counters that SLS should not move into a first priority position over the interest of the Chapter 7 Trustee because 11 U.S.C. § 551 automatically operates to preserve the avoided lien for the benefit of the estate, and because SLS had knowledge of Accredited's First Mortgage on the Property when it acquired the Second

4

Mortgage by assignment. The Chapter 7 Trustee reasons further that because Greenpoint, and/or Litton could have sought to reinstate its mortgage under the doctrine of equitable subordination[5], and because there is no evidence that SLS relied on the release of mortgage when acquiring the Second Mortgage by assignment, SLS should remain in second position.

The Chapter 7 Trustee cites *In re Price,* 97 B.R. 264 (Bankr.E.D.N.C. 1989), *In re Miller,* 286 B.R. 334 (Bankr.E.D.Tenn.1999)*,* and *Terlecky v. American Community Bank (In re Godwin),* 217 B.R. 540 (Bankr.S.D.Ohio 1997) for the proposition that a second mortgage holder does not have priority over a first mortgage avoided by the trustee. In those cases, the mortgages that were avoided by the trustee under 11 U.S.C. § 544 were mortgages that the lienholder released or cancelled by mistake. In that respect, such cases are factually distinguishable from the instant proceeding. Here, Accredited released the First Mortgage because it received payment in full. Thus the First Mortgage was not cancelled in error. Instead, Greenpoint failed to record its mortgage following the refinance, and took no action to retain the priority of the First Mortgage either by obtaining a subordination agreement from Accredited or SLS, or by securing an assignment of the First Mortgage from Accredited.

Section 551 "enables the bankruptcy estate to acquire the rights of the holder of an avoided lien so that junior lienholders do not benefit from the avoidance to the detriment of the

---

[5]New Mexico law recognizes the doctrine of equitable subordination, also known as "the equitable doctrine of reinstatement of liens" which provides that "where a senior mortgagee discharges its mortgage of record and contemporaneously takes a new mortgage, the senior mortgagee's lien is not subordinated to intervening liens in the absence of (1) evidence of an intent to subordinate, or (2) paramount equities in favor of junior lienholders that justify subordinating the senior mortgagee's lien." *Resolution Trust Corp. v. Barnhart,* 116 N.M. 384, 389, 862 P.2d 1243, 1248 (Ct.App. 1993) (citing *Houston Lumber Co. v. Skaggs,* 94 N.M. 546, 547, 613 P.2d 416, 417 (1980)).

5

estate." *Walker v. Elam (In re Fowler),* 201 B.R. 771, 781 (Bankr.E.D.Tenn. 1996) (citing *In re Investors & Lenders, Ltd.,* 156 B.R. 145, 147-148 (Bankr.D.N.J. 1993)).  However, once a lien is avoided, the trustee "'steps only into the creditor's shoes and only obtains those rights which the creditor retains.'" *Barnett Bank of South Fla. v. Weitzner (In re Kavolchyck),* 164 B.R. 1018, 1024 (S.D.Fla. 1994) (quoting *In re McCorhill Pub., Inc.,* 86 B.R. 783, 795 (Bankr.S.D.N.Y. 1988)).  Thus, because "the [bankruptcy] estate obtains no greater rights than the secured creditor possessed" the trustee who successfully avoids an unperfected lien, succeeds to that interest as an unperfected, unsecured creditor and will not gain priority over other, existing properly perfected lienholders.  *Fowler,* 201 B.R. at 781.  *See also, Connelly v. Marine Midland Bank, N.A.,* 61 B.R. 748, 750 (W.D.N.Y. 1986) (finding that "preservation alone does not 'enhance the status of the trustee's lien so that if [the avoided liens] would have been defeated by the junior claimants while in the hands of the lienholders, they are also vulnerable in trustee's.'")(quoting *In re Tri-Sonic, Inc.,* 1 B.R. 138, 142 (Bankr.N.D.Tex. 1982)); *In re Appalachian Energy Industries, Inc.,* 25 B.R. 515, 517 (Bankr.M.D.Tenn. 1982) ("Section 551 cannot be utilized by the trustee to cure defective liens to the detriment of other properly perfected secured creditors").

  In *In re Graybeal,* 2006 WL 2401096 (Bankr.E.D.Tenn. 2006), a case relied upon by the Chapter 7 Trustee, the bankruptcy court agreed generally with the legal principle enunciated by the courts in *Fowler, Kavolchyck,* and *Connelly* that the "trustee only succeeds to the priority status of the lienholder whose lien has been avoided." *Graybeal,* 2006 WL 2401096, at *4. However, the *Graybeal* court reasoned further that under applicable state law, the holder of the first deed of trust that the trustee successfully avoided could have reformed its erroneously

6

released deed of trust based on mutual mistake. *Id.* The court then concluded that because the first deed of trust was recorded in the real property records at the time the second deed of trust was granted, and because the first deed of trust which was released in error could have been reinstated under applicable state law but for the filing of the bankruptcy, the trustee's interest in the avoided first deed of trust was superior to the lienholder's interest in the second deed of trust. *Graybeal,* 2006 WL 2401096, at *4-*5.

Whether following *Graybeal* or *Fowler,* the starting point for determining competing priority interests is state law. *See Fowler,* 201 B.R. at 779 ("Although it is federal law that endows the trustee with the status of a judicial lien creditor, it is state law that determines the legal effect of that status.")(citation omitted); *Godwin,* 217 B.R. at 542 ("The priority of liens is to be determined by reference to nonbankruptcy law.")(citing *United States v. Darnell (In re Darnell),* 834 F.2d 1263 (6th Cir. 1987)); *Graybeal,* 2006 WL 2401096, at *4 (applying Tennessee law). Pursuant to N.M.S.A. 1978 § 14-9-1 (Repl. Pamp. 2003) all documents affecting title to real estate must be recorded in the office of the county clerk of the county in which the real property is located. Recorded documents serve as constructive notice "to all the world of the existence and contents of the instruments so recorded from the time of recording." N.M.S.A. 1978 § 14-9-2 (Repl. Pamp. 2003). Unrecorded documents do not "affect the title or rights to, in any real estate, of any purchaser, mortgagee in good faith or judgment lien creditor, without knowledge of the existence of such unrecorded instruments." N.M.S.A. 1978 § 14-9-3 (Repl. Pamp. 2003). Thus, under these statutes, priority of interest of competing lienholders is determined by date of recording. *See Fulghum v. Madrid,* 33 N.M. 303, 265 P. 454 (1927) (discussing newly revised statute that protects judgment lien creditors without knowledge, in

7

order to give holders of recorded judgment liens priority over unrecorded prior mortgages).

Upon the filing of the Release of Mortgage, the Second Mortgage was the only recorded lien of record. Even if GreenPoint had recorded its mortgage at the time of the refinance, it would have been recorded *after* the date the Second Mortgage was recorded, and would have been in second priority, behind Accredited's Second Mortgage. SLS, as assignee of the Second Mortgage, succeeded to the interest of Accredited in the Second Mortgage, which was recorded prior to the date GreenPoint acquired its mortgage. *Cf. Barnett v. Wedgewood,* 28 N.M. 312, 314, 211 P. 601, 603 (1922) (finding that within the context of chattel mortgages, that the failure to record an assignment does not "disturb the right of priority of the lien in the hands of the assignee of the mortgagee.") (citation omitted). SLS, as holder of a recorded assignment of the Second Mortgage, succeeds to the priority of the lien. Thus, the Chapter 7 Trustee's position as unperfected lienholder upon avoidance of Litton's interest under 11 U.S.C. § 544(a) is inferior to SLS's perfected lien.

Moreover, even though New Mexico recognizes the doctrine of equitable reinstatement of liens, the Court does not find under the undisputed facts that Greenpoint would have been able to equitably reinstate its lien to gain priority over SLS's Second Mortgage. In *Houston Lumber Co. v. Skaggs,* 94 N.M. 546, 613 P.2d 416 (1980), the New Mexico Supreme Court reversed the trial court's determination that the mortgagee's senior priority status was lost to intervening mechanic's and materialmen's liens when it released its construction mortgage and simultaneously obtained a permanent mortgage, adhering to the rule that

> where the holder of a senior mortgage discharges it of record, and contemporaneously therewith takes a new mortgage, he will not, in the absence of paramount equities, be held to have subordinated his security to an intervening lien unless the circumstances of the transaction indicate this to have been his intention, or such intention upon his part is

8

shown by extrinsic evidence.

> *Houston Lumber Co. v. Skaggs,* 94 N.M. 546, 547, 613 P.2d 416, 417 (1980) (quoting *Hadley v. Schow,* 146 Neb. 163, 18 N.W.2d 923, 926 (1945), quoting from 33 A.L.R. 149 (1924) (internal quotation marks omitted).

In weighing the "paramount equities" the court reasoned that there was no indication that the intervening lienholders detrimentally relied on the release of mortgage, and would not be "placed in any worse position if the priority of the released mortgage attached to the renewal mortgage." *Id.* at 548.

In this case Accredited did not release its First Mortgage and simultaneously obtain a replacement, permanent mortgage. Rather, GreenPoint, a different lender, agreed to refinance the First Mortgage and take a new mortgage on the Property. No facts have been alleged to indicate that GreenPoint's expectation from either Accredited or SLS was that it would retain a first priority position after the refinance. *See Resolution Trust Corp. v. Barnhart,* 116 N.M 384, 390, 862 P.2d 1243, (Ct.App. 1993) (noting that the rationale for subrogating the rights of one party for another "has been applied when the subsequent lender is the holder of the first mortgage who releases it anticipating that the subsequent mortgage will retain the first mortgage's priority.") (citing 1 George E. Palmer, *The Law of Restitution* § 3.6 (1978)) When GreenPoint refinanced the First Mortgage, it had constructive notice of Accredited's Second Mortgage. *See* N.M.S.A. 1978 § 14-9-2 (Repl.Pamp. 2003) (recording gives notice "to all the world . . ."). Yet, it did not obtain an assignment of the First Mortgage, nor did it obtain an agreement from Accredited or SLS to subordinate the existing Second Mortgage to the GreenPoint mortgage obtained through the refinance. In a refinancing situation, it is incumbent upon the refinancing lender to secure its intended priority position at the time of the

9

refinance. The Court, therefore, finds that the "paramount equities" under the undisputed facts do not indicate that the doctrine of equitable reinstatement of liens should apply to elevate the unrecorded lien avoided by the trustee to first priority.

Cases like *Price* and *Godwin* reason, in part, that because the second priority lienholder knew of its second priority position in extending the loan, its interest should remain subordinate to the trustee's. *See Price* 97 B.R. at 266 (reasoning that the second lienholder "clearly knew of the [first] lien when . . . [it]s loan was made and did not change its position in reliance on the erroneous cancellation."); *Godwin,* 217 B.R. at 543 (finding that the second mortgage was granted prior to the erroneous cancellation of the first mortgage so that there was no detrimental reliance by the creditor on the erroneous cancellation when it extended its loan). In other words, those second priority lienholders do not qualify as innocent, intervening creditors because there is no indication they relied on the erroneous release of mortgage in extending their loans; consequently they remain in second position behind the trustee who successfully avoided an erroneously released prior mortgage. *See, e.g., Miller,* 286 B.R. at 342, n.5 (noting that there was no evidence that the junior lienholder "was misled by the mistaken release or acted to its prejudice because of the release.")(citation omitted).

There is no indication under the undisputed facts present here as to whether SLS relied on the Release of Mortgage when it obtained the assignment of the Second Mortgage. On the other hand, SLS admits that it was unaware that GreenPoint failed to record its mortgage. However, SLS merely acquired the Second Mortgage by assignment. Thus it succeeded to the interests of the Second Mortgage, whatever such interests might be. As explained above, GreenPoint, as refinancing mortgagee, had constructive notice of the Second Mortgage at the

10

time of the refinance. *See* N.M.S.A. 1978 § 14-9-2 (Repl. Pamp. 2003) (recorded documents "shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording."). GreenPoint becomes the intervening junior lienholder. By failing to obtain an assignment of the First Mortgage, or a subordination of the Second Mortgage from Accredited, GreenPoint's subsequent mortgage obtained through the refinance is second in priority to the Second Mortgage that SLS obtained by assignment. *Cf. Countrywide Home Loans, Inc. v. First Nat'l Bank of Steamboat Springs, N.A.,* 144 P.3d 1224, 1230-31 and n.3 (Wyo. 2006) (finding that the equitable subrogation [also known as equitable subordination] doctrine should not be applied in the refinancing context to allow a refinancing mortgagee to step into the shoes of a prior mortgagee for purposes of obtaining lien priority, reasoning that the refinancing mortgagee could exercise its own due diligence to retain priority such as by obtaining an assignment or subrogation agreement). Even had GreenPoint recorded its mortgage at the time of the refinance, the recording date would be subsequent to the date of recording of the Second Mortgage. SLS's acquisition of the Second Mortgage by assignment elevates SLS's position, but only by virtue of GreenPoint's failure to obtain an assignment of the First Mortgage or a subordination agreement from Accredited when it refinanced the First Mortgage. Thus, in accordance with the applicable New Mexico statutes regarding recording and notice, SLS's lien is in first priority.

Based on the foregoing, the Court concludes that summary judgment should be entered in favor of SLS. The unrecorded First Mortgage is avoided by the Chapter 7 Trustee in accordance with 11 U.S.C. § 544(a), and the unperfected lien is preserved for the benefit of the estate under 11 U.S.C. § 551 subject to SLS's prior, properly perfected lien against the Property.

11

Case 06-01184-m    Doc 17    Filed 05/03/07    Entered 05/03/07 11:12:02    Page 11 of 12

A judgment will be entered in accordance with this memorandum.

                                   /s/ Mark B. McFeeley
                                   MARK B. McFEELEY
                                   United States Bankruptcy Judge

Bonnie B. Gandarilla
Moore, Berkson & Gandarilla, P.C.
Attorney for Plaintiff
P.O. Box 216
Albuquerque, NM 87103

Sharon Hankla
Attorney for Defendant Specialized Loan Servicing, LLC
13725 Struthers Rd Ste 201
Colorado Springs, CO 80921-2451